RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0044p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

_Plaintiff-Appellee_,

*v.*

PEDRO VASQUEZ CAVAZOS, JR. (19-5141);
CHRISTOPHER LEE SERRANO (19-5186),

_Defendants-Appellants_.

Nos. 19-5141/5186

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 6:18-cr-00012—Robert E. Wier, District Judge.

Decided and Filed: February 12, 2020

Before: BATCHELDER, STRANCH, and NALBANDIAN, Circuit Judges.

_____

### COUNSEL

_____

**ON BRIEF:** Andrew M. Stephens, Lexington, Kentucky, for Appellant in 19-5141. Renée Paradis, Brooklyn, New York, for Appellant in 19-5186. Charles P. Wisdom, Jr., Kyle M. Melloan, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

_____

### OPINION

_____

NALBANDIAN, Circuit Judge. After pleading guilty to controlled substance offenses, Pedro Cavazos and Christopher Serrano both received sentencing enhancements because of prior controlled substance convictions. They argue on appeal that the district court improperly applied these enhancements. We agree that Serrano does not qualify as a career offender so we

VACATE his sentence and REMAND for resentencing. But the court properly applied Cavazos's enhancement so we AFFIRM his sentence.

I.

In 2017, Cavazos and Serrano transported cocaine from Texas to Kentucky at the request of undercover FBI officers. Based on this conduct, both Cavazos and Serrano pleaded guilty to a single count of conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846. The United States gave notice to both defendants that 21 U.S.C. § 841(b)(1)(B) subjected them to enhanced statutory punishments because of prior felony drug convictions. Cavazos objected, both orally at his re-arraignment and through a written motion prepared by counsel, to basing the enhancement on his 2004 federal conviction for possession with intent to distribute methamphetamine, arguing that it violated the Fifth Amendment's Double Jeopardy Clause. The district court denied Cavazos's objection, finding that Cavazos failed to satisfy his burden of establishing the unconstitutionality of his prior conviction. And even if he had, the court held, the dual sovereignty exception would permit federal prosecution, and Cavazos violated 21 U.S.C. § 851(e)'s five-year limitations period. Serrano orally affirmed his prior conviction. So the district court applied the statutory enhancement to both defendants, resulting in a penalty for each of them of ten years to life. *See* 21 U.S.C. § 841(b)(1)(B).

Neither defendant objected to his presentence report. So at Cavazos's sentencing, the district court calculated a guidelines range of eighty-four to 105 months. The statutory minimum enhanced the Guidelines recommendation to 120 months, and the court imposed that sentence. At Serrano's sentencing, the district court increased Serrano's offense level to thirty-seven—the mandatory offense level for career offenders guilty of a crime that carries a statutory maximum term of life imprisonment. The court did so because it determined that Serrano's prior federal conviction for conspiracy to possess with intent to deliver cocaine and prior Texas conviction for possession of a controlled substance with intent to deliver qualified as predicate offenses under USSG § 4B1.2. After a three-level reduction for acceptance of responsibility, the district court calculated Serrano's guidelines range to be 262 to 327 months and sentenced Serrano to 262 months. This appeal follows.

II.

Cavazos's confusing appellate brief raises only one argument: that the government obtained the prior conviction used to trigger 21 U.S.C. § 841(b)(1)(B)'s enhanced statutory penalty in violation of the Double Jeopardy Clause.  The district court correctly noted both that the dual-sovereignty doctrine likely renders Cavazos's prior conviction constitutionally permissible, *see Gamble v. United States*, 139 S. Ct. 1960, 1979–80 (2019), and that Cavazos likely failed to satisfy his burden of establishing the unconstitutionality of his prior conviction. But what proves dispositive here is 21 U.S.C. § 851(e).  That section prevents *any* challenge to a prior conviction used to enhance the statutory penalty under § 841(b)(1)(B) when five years have elapsed between the prior conviction and "the information alleging such prior conviction." § 851(e).  The government first notified Cavazos that his prior conviction subjected him to an enhanced statutory punishment on June 1, 2018.  And the Western District of Texas entered judgment against Cavazos for his prior possession with intent to distribute methamphetamine conviction on December 3, 2004.  So almost fourteen years passed between the two.  Thus, § 851(e) prevents Cavazos from challenging the constitutionality of his prior conviction regarding his enhanced sentence.  Cavazos argues that he cannot waive his constitutional challenge.  But that is not true.  As we said in *United States v. Reed*, "Congress could choose to eliminate all collateral attacks on prior convictions with regard to sentence enhancement, save for the limited circumstance in which the prior conviction was obtained in violation of the right to have counsel appointed."  141 F.3d 644, 652 (6th Cir. 1998) (citing *Custis v. United States*, 511 U.S. 485, 491–97 (1994)).  Because that narrow exception does not apply here, Congress's restriction on Cavazos's ability to challenge his prior conviction's use in enhancing his sentence is valid.  So we affirm Cavazos's sentence.

III.

Serrano appeals only his classification as a career offender.  He concedes that his conviction here and his prior federal conviction qualify as "controlled substance offenses" under USSG § 4B1.2.  It is his prior Texas conviction for possession of a controlled substance with intent to deliver that he claims is outside that section's definition of "controlled substance offense."  If the district court had not classified Serrano's Texas conviction as a predicate offense

under § 4B1.2, Serrano's offense level would have been nine levels lower and his Guidelines range would have been less than half of the range the court used to sentence Serrano. "A district court's failure to properly calculate the advisory Guidelines range is a 'significant procedural error.'" *United States v. Fuller-Ragland*, 931 F.3d 456, 459 (6th Cir. 2019) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). So Serrano is effectively challenging the procedural reasonableness of his sentence. Because Serrano objects to the calculation of his Guidelines range for the first time on appeal, we review only for plain error. *See id*; Fed. R. Crim. P. 52(b). In other words, we may reverse only if Serrano can show "(1) error (2) that 'was obvious or clear,' (3) that 'affected defendant's substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).

The Supreme Court has resolved the third and fourth prongs of that inquiry for us. In *Molina-Martinez v. United States*, the Court held that improper calculation of the Guidelines range is a "significant procedural error" that usually affects a defendant's substantial rights. 136 S. Ct. 1338, 1345–46 (2016). It reserved judgment in cases where there is evidence that the sentencing court would have imposed the sentence it chose regardless of the Guidelines range. *Id.* at 1346–47. But here, as in *Molina-Martinez*, "the record is silent as to what the district court might have done had it considered the correct Guidelines range," so "the court's reliance on an incorrect range . . . suffice[s] to show an effect on the defendant's substantial rights." *Id.* at 1347.[1] And in *Rosales-Mireles v. United States*, the Supreme Court held that "[t]he risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error[.]" 138 S. Ct. 1897, 1908 (2018). So we are left to determine only whether the district court's classification of Serrano as a career offender was an obvious or clear error.

For offenses that carry a maximum statutory penalty of life—such as 21 U.S.C. § 841(b)(1)(B) when enhanced—USSG § 4B1.1 imposes a mandatory offense level of thirty-

---

[1]And in fact, the sentencing judge suggested that the Guidelines were the primary factor he used to select a sentence. (*See* R. 143, Serrano Sentencing Tr. at PageID #745 ("I do think it's a guideline scenario. . . . And so I think the guidelines appropriately capture the factors and purposes of sentencing in this case. And so I am going to stay within the guidelines."))

seven for adult defendants that commit a controlled substance offense and have "at least two prior felony convictions of either a crime of violence or a controlled substance offense."

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

USSG § 4B1.2(b). Serrano concedes that his conviction here and his prior federal conviction satisfy this definition. (Serrano Br. at 6.) At issue is whether the district court committed an obvious or clear error in determining that Serrano's Texas conviction for possession of a controlled substance with intent to deliver, in violation of Texas Health & Safety Code § 481.112, is a "controlled substance offense" under USSG § 4B1.2.

In determining whether a state criminal conviction qualifies as a "controlled substance offense," we must determine whether the *elements of the offense* require that the defendant engage in the conduct defined in USSG § 4B1.2. *Taylor v. United States*, 495 U.S. 575, 600 (1990); *United States v. Eason*, 919 F.3d 385, 388 (6th Cir. 2019). This categorical inquiry means we look only to the elements of the offense set forth in the statute itself, rather than the particular facts of the defendant's case. *Taylor*, 495 U.S. at 602; *Eason*, 919 F.3d at 388. But when a statute is divisible—i.e., it "sets out one or more elements of the offense in the alternative"—we apply a modified categorical approach, looking to a "limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Descamps v. United States*, 570 U.S. 254, 257 (2013).

When state courts definitively answer whether a statute is divisible, we "need only follow what [they] say[]." *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016). And the Texas Court of Criminal Appeals has done just that with § 481.112. In *Lopez v. State*, that Court held that "there are at least five ways to commit an offense under Section 481.112" but all of these are just "several different *means* for committing the offense of delivery of a single quantity of drugs so that, no matter where along the line of actual delivery . . . the drug dealer may be held accountable[.]" 108 S.W.3d 293, 297, 299–300 (Tex. 2003) (emphasis added). So § 481.112 is

*not* divisible.  *See Mathis*, 136 S. Ct. at 2254–56 (explaining that a statute must set out alternative elements rather than alternative means of fulfilling those elements to qualify as divisible).  The Fifth Circuit reached the same conclusion in *United States v. Tanksley*, 848 F.3d 347, 352 (5th Cir. 2017) ("The means or elements question has been directly answered by the Texas court."), *supplemented*, 854 F.3d 284 (5th Cir. 2017), and we normally defer to other federal courts of appeals for interpretation of the laws of the states within their boundaries.  *See Curtis 1000, Inc. v. Martin*, 197 F. App'x 412, 422 n.4 (6th Cir. 2006).  Thus, we must apply the categorical approach.**²**

At the time of Serrano's conviction, § 481.112 made it a crime to "knowingly manufacture[], deliver[], or possess[] with intent to deliver a controlled substance[.]"  Tex. Health & Safety Code § 481.112 (2004) (amended 2009).  And Texas law also included "offering to sell a controlled substance" within the definition of "deliver."  Tex. Health & Safety Code § 481.002(8) (2004) (amended 2013).  Serrano argues that inclusion of offers to sell controlled substances makes § 481.112 "too broad to categorically qualify" as a controlled substance offense because § 4B1.2 does not include that conduct.  (Serrano Br. at 8–9.) He claims that we should defer to the Fifth Circuit, which has found as much, because "[t]he question of whether a particular state court offense is a predicate offense is primarily one of state law."  (Serrano Br. at 11.)

In *United States v. Hill*, the Fifth Circuit found plain error in a district court's career offender classification based on a § 481.112 conviction.  716 F. App'x 327, 329–31 (5th Cir. 2018) (per curiam).  That holding was required by *Tanksley*, discussed above, where the Fifth Circuit held that § 481.112 is indivisible.  848 F.3d at 352.  *Tanksley* also extended *United States v. Gonzales*, where the Fifth Circuit held that delivery of a controlled substance under § 481.112 includes conduct beyond what the Federal Sentencing Guidelines' definition of "drug trafficking offense" includes.  *Id.* at 351 (citing 484 F.3d 712, 714 (5th Cir. 2007) (per curiam)).

---

**²**While we defer to the Fifth Circuit and Texas courts on the divisibility of § 481.112, we express no opinion on the question.  Especially because only Serrano's briefing addresses divisibility.  *See Koubriti v. Convertino*, 593 F.3d 459, 471 (6th Cir. 2010) (holding that it is improper to reach the merits of questions not developed in the lower court record or briefed by the parties); *United States v. Blackie*, 548 F.3d 395, 404 (6th Cir. 2008) (Sutton, J., concurring) ("Before taking sides on how to approach this question, I would prefer to wait until the issue has been raised by the parties, it has been briefed and it makes a difference to the outcome of the case.").

Finding "no substantive difference between a 'controlled substance offense' and a 'drug trafficking offense' under the Guidelines," the *Tanksley* court held that *Gonzales* controlled, and the indivisible § 481.112 is too broad to categorically qualify as a "controlled substance offense." *Id* at 351–52.

Again, we normally defer to a federal Court of Appeals' analysis of state law within its circuit. *See Curtis 1000, Inc.*, 197 F. App'x at 422 n.4. But the substance of Texas law isn't in dispute here. The question is whether the *federal* sentencing guidelines include conduct that Texas undisputedly criminalizes. We retain our full authority to interpret the Guidelines. And we need not look to the Fifth Circuit when binding precedent from our own Circuit answers the question.

When the district court sentenced Serrano, the court was clearly correct in finding that § 4B1.2's definition of controlled substance offenses included offers to sell controlled substances. That's because we said as much in *United States v. Evans*. 699 F.3d 858, 868 (6th Cir. 2012). There, we determined that "an offer to sell is properly considered an attempt to transfer a controlled substance[.]" *Id*. at 867. And because the application notes to § 4B1.2 tell us that the definition of "controlled substance offenses" includes attempt crimes, statutes that criminalize offers to sell controlled substances qualify as predicate offenses under § 4B1.1. *Id*. at 867–68. But after the district court sentenced Serrano, and before this appeal, we decided *United States v. Havis*. 927 F.3d 382 (6th Cir. 2019) (en banc). In *Havis*, we rejected the second analytical step in *Evans*. Application notes must be "'*interpretations of*, not *additions to*, the Guidelines[.]'" *Id*. at 386 (quoting *United States v. Rollins*, 836 F.3d 737, 742 (7th Cir. 2016) (en banc)). Because the text of § 4B1.2 never mentions attempt crimes, the application note's inclusion of attempt crimes in the definition of predicate "controlled substance offenses" is an impermissible "addition to" the Guidelines. *Id*. at 386–87. So statutes that include attempted delivery of controlled substances are too broad to categorically qualify as "controlled substance offenses" under § 4B1.2. *Id*. at 387.

*Havis* did not discuss offers to sell controlled substances and therefore did not overrule *Evans*'s holding that "an offer to sell is properly considered an attempt to transfer a controlled substance[.]" 699 F.3d at 867; *see* Bryan A. Garner et al., The Law of Judicial Precedent 308

(2016) ("[A] decision that a court has 'overruled in part' or 'reversed in part' maintains precedential value to the extent that the earlier opinion doesn't conflict with the overruling or reversing opinion."). *See also United States v. Johnson*, 933 F.3d 540, 544 (6th Cir. 2019) (noting in a different context that *Havis*'s abrogation of *Evans* was limited). And *Havis* made clear that § 4B1.2's definition of "controlled substance offenses" does not include attempt crimes. 927 F.3d at 387. Thus, statutes that criminalize offers to sell controlled substances are too broad to categorically qualify as predicate "controlled substance offenses." As the law stands *today*, it is clear or obvious error to find § 481.112 categorically qualifies as a "controlled substance offense" under § 4B1.2.**[3]**

Despite the language of the plain error standard—which suggests that the error must have been clear or obvious at the time of the district court's ruling—the Supreme Court has instructed that in situations like this, "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration." *Johnson v. United States*, 520 U.S. 461, 468 (1997). Because it would be clear or obvious error today for the district court to enhance Serrano's offense level under § 4B1.1 based on a predicate conviction under § 481.112, we find the first two elements of the plain error standard satisfied. With all four of the plain error elements satisfied, we vacate Serrano's sentence and remand for resentencing.

IV.

For these reasons, we **AFFIRM** Cavazos's sentence, **VACATE** Serrano's sentence, and **REMAND** for resentencing consistent with this opinion.

---

**[3]**True, there is no binding case law from this circuit that has found § 481.112 too broad to categorically qualify as a predicate controlled substance offense. But binding case law need not address the same statute for the district court's interpretation of that statute to be plain error. *See United States v. Powell*, 781 F. App'x 487, 489–90 (6th Cir. 2019) (relying on *Havis*, which involved a predicate Tennessee controlled substance conviction, to vacate a career offender sentence based on an Ohio controlled substance conviction). Rather, binding case law must clearly answer the question presented. *United States v. Al-Maliki*, 787 F.3d 784, 794 (2015) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993); *United States v. Woodruff*, 735 F.3d 445, 450 (6th Cir. 2013)). The question presented here is whether a statute that criminalizes offers to sell controlled substances is too broad to categorically qualify as a predicate controlled substance offense under § 4B1.2. And taken together, *Havis* and what's left of *Evans* clearly answer that question in the affirmative.